IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
SENIOR JUDGE WALKER D. MILLER

Civil Action No. 10-cv-01105-WDM-CBS

JOHN H. ALPERS, JR.,

    Plaintiff,

v.

TOWN OF ERIE, a township,
JOHN HALL, Chief of Police for the Town of Erie,
SERGEANT REX BROWN, Police Officer for the Town of Erie, and
OFFICER PHIL LUKENS, Police Officer for the Town of Erie,

    Defendants.

---

## ORDER ON MOTION FOR SUMMARY JUDGMENT

Miller, J.

This matter is before me on the Motion for Summary Judgment (ECF No. 14) filed by Defendants Town of Erie (the "Town"), John Hall, Phil Lukens, and Rex Brown (collectively "Defendants"). Plaintiff John H. Alpers, Jr. ("Plaintiff") opposes the motion. I have reviewed the parties' written arguments and the evidence submitted with the briefs and conclude that oral argument is not required. For the reasons set forth below, Defendants' motion will be granted.

### Background[1]

This is a civil rights lawsuit resulting from a police dog bite incident that occurred on May 24, 2009. That night, Officer Lukens and Sergeant Brown, employees of the Erie, Colorado Town Police Department, were on duty. Around 10:15 p.m., a report was

---

[1] The facts herein are drawn from the affidavits and other evidence submitted with the parties' briefs and are undisputed unless otherwise noted.

received concerning a fight at Coal Creek Park in Erie.  Officer Lukens was dispatched to the call, as were several other officers.  While en route to the scene, officers were updated with information that a male suspect was threatening or menacing others with a stick.  Officer Lukens drove to the scene and contacted a witness named Matthew Roberts.  Mr. Roberts told Officer Lukens that a Hispanic male wearing a black jacket and tan shorts was threatening boys in the park but had fled on foot; Mr. Roberts said he had chased the suspect but had lost him around where he met Officer Lukens.  Officer Lukens aired the description of the suspect to other officers over the radio.  A perimeter was formed.  Sergeant Brown arrived in the area at approximately 10:21 p.m. and took up a perimeter position around the park.

The Town does not have a police canine and does not have a K-9 officer or handler.  However, the Town shares a border with Boulder County and Boulder County Sheriff's Office K-9 officers will respond to calls within the Town's jurisdiction.  The Town's policies on mutual aid requests provide guidance on this process.  Exh. 3 to Pl.'s Resp., ECF No. 51.  The policy provides, *inter alia*, that the responding agency's canine handler "will be there and under the direction of the [Town's] shift supervisor, however the canine handler will be subject to his own department's policies, procedures and guidelines as it relates to use of the canine."  *Id.* at 2.

In this case, Deputy Kelly Pohl, a K-9 officer with the Boulder County Sheriff's Office, assisted with the search for the suspect with her dog.[2]  Deputy Pohl met with Officer

---

[2]None of the named individual defendants had requested assistance from a K-9 unit; this was arranged by others in the Town's Police Department and the Boulder Sheriff's Department.

2

Lukens at the location where the suspect had last been seen. Officer Lukens gave her the description of the suspect and acted as her cover officer while Deputy Pohl handled the dog. Deputy Pohl's canine began to track but eventually lost the track. Officer Lukens suggested that they search an area near some bars and ended up in an alley between Pierce and Briggs Streets in Erie.

While standing in the 400 block of the alley, Officer Lukens saw a man wearing a dark shirt and tan shorts or pants in the alley one block to the north. However, the lighting was poor and Officer Lukens could not discern the man's age or race. The man was Mr. Alpers, the plaintiff in this case. Deputy Pohl and Officer Lukens shined their flashlights on Plaintiff; Deputy Pohl yelled at him to stop and warned that she would release the dog. Plaintiff first began to walk towards the officers, then turned away and appeared to move quickly back northbound in the alley. Officer Lukens contends he yelled "stop" and "police" but got no response.

Deputy Pohl ran northbound after Plaintiff, while Officer Lukens broke off and went northbound on Briggs Street to cut off the man's escape. He did not witness what occurred thereafter but as he got to where he thought the man might emerge, he heard Deputy Pohl screaming. He ran to alley and saw Deputy Pohl and Plaintiff, who was on the ground holding a small dog. Deputy Pohl's canine was biting Plaintiff's dog[3]. Deputy Pohl yelled at Plaintiff to stop pulling on his dog and then ordered her dog to release.

Plaintiff was not the suspect sought in the park menacing incident. He lived in the

---

[3] I cannot determine from the record whether Deputy Pohl had released her canine into the alley or whether it was still leashed at the time it encountered Plaintiff's dog.

area and was walking his own dog in the alley when the two officers arrived. Plaintiff is elderly and not Hispanic. He is hard of hearing and did not hear anything that the officers had shouted. He saw the flashlights and figures in the alley but did not recognize that they were police officers. In statements to police he said that he thought they were "thugs" or "kids" and so he turned and tried to get away from them. Plaintiff also received bite injuries, apparently from trying to rescue his dog. After Officer Lukens arrived, he assisted Plaintiff in getting to his feet and called for an ambulance. Plaintiff was taken by ambulance for treatment; medical care was also provided for his dog.

Sergeant Brown arrived on the scene after the bite incident. Plaintiff was understandably quite angry and vented heatedly at Sergeant Brown. According to Plaintiff and other witnesses, Sergeant Brown told Plaintiff to shut up and was otherwise quite rude to Plaintiff; Sergeant Brown denies this. This was the only contact between Plaintiff and Sergeant Brown. It is undisputed that neither Lukens nor Brown were present when Deputy Pohl's canine was released (if it was released) or otherwise came into contact with Plaintiff and his dog and that neither of them instructed[4] Deputy Pohl regarding how to handle or command her canine.

Defendant John Hall, Chief of Police for the Town, was off duty and at home when the entire incident occurred and was informed of the incident by telephone after it occurred.

After the motion for summary judgment was filed, Plaintiff filed an amended

---

[4]Plaintiff attempts to argue there is an issue of fact in this regard by providing evidence that these individuals might have had the authority to make such instructions by virtue of the mutual aid arrangements and Sergeant Brown's position as the commanding officer of the search operation. Plaintiff, however, does not provide evidence to show that any such instruction was actually given.

complaint, which contains the following claims for relief: (1) "Assault in Derogation of rights protected by U.S. Constitution," which I understand to be a claim for excessive force in violation of Plaintiff's Fourth Amendment rights; (2) "Unreasonable Seizure," which I construe to be a claim that he was seized without probable cause in violation of his Fourth Amendment rights; and (3) "Equal Protection of the Law," apparently based on the idea that he was seized for discriminatory reasons, *i.e.*, because the officers believed he was Hispanic and not because they had a reasonable belief that he had committed any violation of the law. First Amended Complaint, ECF No. 1105. The claims are asserted against the individual defendants and against the Town on a failure to train/supervise theory.

## Standard of Review

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A factual issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying 'a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.'" *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)). Then, "[t]o avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Id.*

## Discussion

The individual defendants move for summary judgment on the basis of qualified

immunity. The Town moves for summary judgment on the grounds that none of its employees committed any constitutional violation and/or because no custom or policy of the Town led to any constitutional violation.

"In an action under section 1983, individual defendants are entitled to qualified immunity unless it is demonstrated that their alleged conduct violated clearly established constitutional rights of which a reasonable person in their positions would have known." *Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1251 (10th Cir. 1999). Once a defendant has raised qualified immunity as an affirmative defense, the plaintiff bears the heavy two-part burden of demonstrating that (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established at the time of the alleged conduct. *Reynolds v. Powell*, 370 F.3d 1028, 1030 (10th Cir. 2004). In *Pearson v. Callahan*, 129 S.Ct. 808 (2009), the Supreme Court held that the court has discretion to determine "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." 129 S. Ct. at 818.

The individual defendants argue that Plaintiff's claims against them fail because none of them personally seized or used any force against Plaintiff. I agree. Plaintiff was seized by the police canine, or, more specifically, he was seized when his dog was seized by the canine. The canine was entirely under the control of Deputy Pohl, who is not named as a defendant in this lawsuit. None of the named individuals were even present at the time that the canine came into contact with Plaintiff and his dog or had any role in the handling of the canine. Only Officer Lukens, who was with Deputy Pohl as they were seeking the suspect, could have influenced the handling of the dog and there is simply no evidence that he did. Officer Lukens' efforts to command Plaintiff to stop cannot be

considered a seizure because Plaintiff did not stop or obey the command. *Calif. v. Hodari D.*, 499 U.S. 621, 626 (1991) (pursuit by officer where suspect does not yield does not amount to a seizure for Fourth Amendment purposes).

Similarly, to the extent Plaintiff's claims are based on a supervisory liability theory, I agree with Defendants that summary judgment is also appropriate. To establish supervisory liability under section 1983, a plaintiff must establish a "deliberate, intentional act" by a supervisor such that there is a "sufficient causal connection" between the supervisor and the constitutional violation. *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006). Mere negligence generally is not sufficient to establish liability. *Id*. Rather, a plaintiff must show active participation or acquiescence through personal participation, exercise of control or direction, failure to supervise, or tacit authorization of the offending acts. *Id*. at 1152-53. A supervisor or municipality may be held liable where there is essentially a complete failure to train, or training that is so reckless or grossly negligent that future misconduct is almost inevitable. *Meade v. Grubbs*, 841 F.2d 1512, 1528 (10th Cir. 1988).

Here, as discussed above, none of the named defendants actively participated or controlled or directed Deputy Pohl's actions or was even present when the relevant contact occurred. At most, the evidence shows that Sergeant Brown and Officer Lukens were aware of the possibility that Deputy Pohl might deploy her dog as part of the effort to capture the suspect. However, I disagree with Plaintiff that either of these officers had reason to know that Deputy Pohl's dog would attack the dog of a person who was not the suspect sought in the menacing incident, and that the person would then intervene and get bitten, and that their failure to prevent that somehow gives rise to liability.

Plaintiff argues that Defendant Lukens is responsible for the bite incident because there is some evidence that the witness was intoxicated and that, therefore, Officer Lukens should not have relied on the description of the suspect. This is unavailing; Officer Lukens stated in his deposition that he believed the witness was capable of providing an accurate description and there is no evidence to show that the description was false or unreliable. Plaintiff goes on to argue that Officer Lukens then compounded this error by improperly identifying Plaintiff as the suspect without having an adequate basis, since it was too dark and the officers were too far away to determine whether the man they saw was Hispanic and otherwise matched the description. Therefore, Plaintiff contends, Officer Lukens set into motion a series of events that he should have known would cause others to deprive the plaintiff of his constitutional rights. Plaintiff cites *Mink v. Knox*, 613 F.3d 995, 1001 (10th Cir. 2010) for this theory of liability. Plaintiff argues that Sergeant Brown is liable because he was in command of the operation and failed to adequately monitor Deputy Pohl and Officer Lukens. Plaintiff provides no explanation of how Chief Hall should be liable individually, other than in his official capacity.

Plaintiff is correct that the *Mink* decision stands for the proposition that section 1983 imposes liability on any person who, acting under color of law, "subjects, or causes to be subjected" another person to the deprivation of his or her constitutional rights. 42 U.S.C. § 1983 (emphasis added). Direct participation is not necessary, but a plaintiff must nonetheless show an "affirmative link between the constitutional deprivation and the officer's exercise of control or direction." *Mink*, 613 F.3d at 1001 (citation omitted). *Mink* involved the execution of a search warrant and seizure of personal items; the defendant was the deputy district attorney who had reviewed and approved a search warrant affidavit.

8

The warrant issued and police seized the plaintiff's computer and other items. The plaintiff asserted that the warrant affidavit, and the substantially similar search warrant that resulted, lacked particularity and probable cause and therefore the seizure of his property violated his First and Fourth Amendment rights. The Tenth Circuit agreed that the prosecutor's actions had a sufficiently close causal connection to the improper seizure such that dismissal on qualified immunity grounds was not appropriate. *Id.* at 1002-3. The deputy district attorney knew or reasonably should have known that the presentation of the search warrant affidavit for approval would lead to the execution of the warrant and seizure of the items described in the warrant. *Id.*

*Mink* does not alter my analysis and conclusion that Defendants are entitled to qualified immunity. Under Plaintiff's theory, Officer Lukens' culpable conduct was to convey to another officer a description of a suspect given to him by a witness and to then attempt to make contact with a person whose clothing was similar to that of the suspect. Unlike *Mink*, there is no close causal nexus between those decisions/actions and the resulting dog bite. Presenting a warrant affidavit to a magistrate judge is part of a defined process with an intended purpose of receiving and executing a search warrant. By contrast, relaying a description of a suspect and identifying a person with some of the suspect's characteristics can lead to any number of outcomes, which are not entirely predictable and are dependent on events and circumstances. Therefore, Plaintiff has not presented sufficient evidence to show an "affirmative link" that would give rise to liability for causing a deprivation of Plaintiff's constitutional rights.

Moreover, Plaintiff has provided no authority to show that the reasonable police officers in the Defendants' positions would have known that their actions violated clearly

established law. Deputy Pohl and Officer Lukens spotted a man whose clothing was similar to that of a suspect they were seeking and they were unable to discern other features that would have shown he was not the suspect. The officers were within walking distance of where the incident had occurred and so it was not unreasonable to assume the suspect could be at that location and to further investigate the man's identity. The suspect had been threatening and there was a possible officer safety risk. When the officers identified themselves as police and told the man to stop so that they could determine whether he was the suspect he moved away from them and appeared to be eluding them. Deputy Pohl gave a warning that she would release the dog but the man still did not respond. The officers therefore pursued the man to determine what was going on. Plaintiff has not provided any case law that supports finding liability for a constitutional violation under such circumstances, much less "clearly established" law.

Because I find that the individual officers did not violate Plaintiff's constitutional rights and are entitled to qualified immunity, the Town cannot be liable either. To the extent that Plaintiff argues that the Town is liable because of Deputy Pohl's actions, I conclude that the argument fails. A municipality or other governmental entity may be subjected to liability under § 1983 where the action alleged to be unconstitutional executes or implements a governmental policy or custom. *Monell v. New York Dept. of Social Services*, 436 U.S. 658, 690-91 (1978). Even if Deputy Pohl handling of her dog resulted in a violation of Plaintiff's constitutional rights, Plaintiff has provided no evidence that Deputy Pohl's decisions were in any way due to a policy or custom of the Town. The Town does not train or have policies regarding K-9 units; rather, the evidence shows that the handler is entirely responsible for canine, subject to the handler's own department policies and procedures.

Plaintiff has offered no evidence of a custom or policy relevant to canine handling, other than a policy regarding when and how to request aid from other jurisdictions, much less a policy that is causally connected to the incident that occurred here.

The trauma suffered by Plaintiff and his dog is indeed unfortunate. The injuries inflicted by the police canine as a result of the convergence of circumstances were serious. Nonetheless, I conclude that Plaintiff's constitutional rights were not violated by these defendants.

Accordingly, it is ordered:

1. Defendants' Motion for Summary Judgment (ECF No. 14) is granted. Summary judgment shall enter in favor of Defendants and against Plaintiff on all claims.

2. Defendants may have their costs.

DATED at Denver, Colorado, on February 24, 2011.

BY THE COURT:

s/ Walker D. Miller
United States Senior District Judge